NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| WARREN MOORE, | : | |
| | : | |
| Petitioner | : | Civil Action No. 20-19857 (RMB) |
| | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| | : | **APPOINTING CJA COUNSEL FOR** |
| | : | **EVIDENTIARY HEARING** |
| DAVID E. ORTIZ, WARDEN | : | |
| | : | |
| Respondent | : | |
| | : | |

BUMB, United States District Judge

Petitioner Warren Moore ("Moore"), an inmate incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed a habeas petition under 28 U.S.C. § 2241, challenging the Bureau of Prison's ("BOP") calculation of his sentence and arguing he is entitled to immediate release. (Pet., Dkt. No. 1.) Respondent filed an answer, opposing habeas relief. (Answer, Dkt. No. 7.) Petitioner replied. (Letters, Dkt. Nos. 8, 9; Reply Brief, Dkt. Nos. 10, 11.) The Court subsequently ordered Respondent to file Petitioner's Presentence Report under seal. (PSR, Dkt. No. 18.) Petitioner also filed an emergency motion for preliminary injunctive relief and a motion to appoint pro bono counsel. (Emergency Mot. Preliminary Inj., Dkt. No. 14; Mot. to Appoint Counsel, Dkt. No. 16.) The habeas petition is now before this Court. For the reasons discussed below, the Court will appoint counsel and hold an evidentiary hearing in this matter.

I.      BACKGROUND

The bank fraud conspiracy ultimately resulting in Moore's federal conviction took place in 2013 and 2014. United States v. Cato et al., 14-cr-315-WB (E.D. Pa. Dec. 18, 2014) (hereafter "United States v. Moore, 14-cr-315 (E.D. Pa.)" (Dkt. No. 95.)[1]  On December 18, 2014, the U.S. District Court, Eastern District of Pennsylvania unsealed the Second Superseding Indictment, which charged Moore with participation in a bank fraud conspiracy, and the district court issued a bench warrant for Moore's arrest. United States v. Moore, 14-cr-315 (E.D. Pa.) (Dkt. Nos. 95, 97.) In the meantime, on February 18, 2015, New Jersey state authorities arrested Moore on state charges. (Declaration of Forest Kelly ("Kelly Decl.")  ¶ 4, Dkt. No. 7-1.)  Moore had not been apprehended by federal law enforcement, so the federal court issued a writ of prosecution, and on March 4, 2015, Moore transferred into temporary federal custody from state custody in Mercer County, New Jersey. (Id. ¶ 5, Attach. 3.) Petitioner's federal "Individual Custody/Detention Report" ("USM Form 129") indicates that he was arrested by the United States Secret Service on March 4, 2015. (Dkt. No. 7-1 at 19.)

On July 29, 2015, Moore pleaded guilty in the Eastern District of Pennsylvania, before the Honorable Wendy Beetlestone, to federal charges in Counts 1, 2, 5, 10, 11 and 13 of a Second Superseding Indictment and received a total 75-month term of imprisonment. United States v. Moore, 14-cr-315 (E.D. Pa.)  (Dkt. No. 485.); (Kelly Decl., Attach. 4, Dkt. No. 7-1 at 30.)   At sentencing, Judge Beetlestone did not direct Petitioner's federal sentence to run concurrently with any other sentence. (Id. at 110-121.)

---

[1]  Available at www.pacer.gov (last visited September 15, 2021).

The Government, at sentencing, provided the following background of Petitioner's federal charges.

> Once Mr. Hayes was arrested [on] March 20, 2014[,] on local charges[,] the agent continued to try to implore … Mr. Moore to fulfill what he said he was going to do which was to continue to cooperate with the federal government in its prosecution of these now federally adopted charges. He did not. He refused to come in. He stopped contact with Special Agent McCaa and did not, in fact, the government tried to reach out to him through Special Agent McCaa initially before charges were even brought in order to have him come in and as others have done in this case, Your Honor, plea to a felony information and get a cooperation plea agreement. Mr. Moore did not avail himself of that opportunity. he did not -- so from March, 2014 until we adopted the case which was in April of 2014[,] I believe[,] that Special Agent McCaa was in contact with Mr. Moore trying to implore him to come – come into the -- come in and -- and talk to the government. He did not.
>
> .            .            .
>
> The government then once it was clear that Mr. Moore was not going to come in of his own volition for the purposes of [a] grand jury in September, actually September 5, 2014 [,] that the government then actually issued a complaint and warrant and Mr. Moore was informed that there was a -- an arrest warrant for him for a complaint and warrant and that he needed to come in. Once he was told about that complaint and warrant, Your Honor, it's my understanding that there was no more communication after that time, except for the two times when Mr. Moore attempted to use Special Agent McCaa's name to avoid getting arrested on other local matters. Special Agent McCaa was called twice, Your Honor, in order to -- with -- by other law enforcement saying that Mr. Moore was saying that he was working for the government and therefore should not be arrested when that was not the case. He was not working for the government at that point.
>
> .            .            .
>
> [T]he government dropped a complaint and warrant in September of 2014, he was aware of this, he refused to come in and he remained in an absconder status. The government eventually withdrew that complaint and warrant and indicted him on November 20, 2014. On November 20, 2014 after the indictment Special Agent McCaa once again reached out to the -- to Mr.Moore advised him now that there was a federal indictment of which he was named and that there was an arrest

> warrant and Mr. Moore made arrangements to self-surrender,
> but he did not. In fact, he was out at in a fugitive status until he
> was arrested in Mercer County, New Jersey on a state warrant
> on February 18, 2015.

(Kelly Decl., Attach. 4, Dkt. No. 7-1 at 72-76.)

Special Agent McCaa testified at Petitioner's sentencing hearing, in

relevant part:

> Q. Okay. And is it true that on March 20, 2014 you assisted or
> had knowledge that the Burlington Township and Burlington
> County Prosecutor's Office and various townships conducted a
> search warrant of Mr. Hayes' home and the arrest of Mr.
> Hayes?
>
> A. Correct, yes.
>
>      .     .     .
>
> Q. In fact, wasn't it a fact that Mr. Moore was actually released
> from custody by the Burlington Prosecutor's Office for the
> purposes of proactive cooperation and the anticipated
> cooperation of his -- of the federal case?
>
> A. Correct. Yes, he was.
>
> Q. Okay. And after the case was taken federal or adopted you
> came to learn later on that there was another investigation at
> the time; is that correct? For Adolphus Cato?
>
> A. Yes; correct.
>
> Q. And that the two investigations were merged between social
> -- I'm sorry -- between Secret Service and Homeland Security; is
> that correct?
>
> A. That is correct.
>
> Q. And did Mr. Moore at any time come into your office to
> further his cooperation with your federal investigation?
>
> A. He -- he has been in my office since that March 20th
> 19 date.

Q. Okay. And what did he do?

A. I had him look at some pictures. We talked about his
need to continue to cooperate to further his federal indictment.

Q. Okay. And was that before a complaint and warrant was
issued in September?

A. Yes, that was before.

.     .     .

Q. Okay. And wasn't it true that he was eventually indicted in
November 20, 2014?

A. Yes.

Q. And did you make him aware of the indictment?

A. Yes.

Q. And did you try to make arrangements with him for him to
self-surrender?

A. Yes. He and I spoke on the phone at length and he was
down south and he was supposed to turn himself in the next
day and we waited and he never showed up.

Q. And was the next time that you heard or saw Mr. Moore
was when he was arrested by New Jersey law enforcement in
February of 2015?

A. Yes.

(Kelly Decl., Attach. 4, Dkt. No. 7-1 at 78-82.)

After his guilty plea and sentencing in federal court, Moore was returned to New

Jersey state authorities on May 6, 2016.  (Kelly Decl. ¶ 7, Attach. 2; Dkt. No. 7-1 at 19.)  On

September 30, 2016, the New Jersey Superior Court, Mercer County sentenced Moore in

case numbers 12-10-00971-I, 13-03-00418-I, 14-04-00492-I, and 15-04-00493-I to a 3-year

term of imprisonment. (Kelly Decl., Attach. 5, Dkt. No. 7-1 at 147-158.) The Judgment and

Commitment Orders for these offenses provide that the state sentences run "concurrent to the federal sentence defendant is currently serving." (Id. at 147, 150, 153, 156.) The New Jersey Superior Court granted Moore credit of 744 days for the time he spent in primary state custody from July 17, 2012 to December 15, 2012; March 13, 2014 to March 14, 2014; and February 18, 2015 to September 29, 2016. (Id.)

The New Jersey Department of Corrections released Moore on parole on March 16, 2017,  and transferred him to the custody of state authorities in Burlington County, New Jersey. (Kelly Decl., Attach. 7, Dkt. No. 7-1 at 162.)  Moore faced state charges in Burlington and Hunterdon County, New Jersey. (Id.) On October 10, 2017, the U.S. Marshals Service placed a detainer on Moore for his 75-month federal sentence, and Burlington County officials acknowledged the detainer on October 13, 2017. (Id., Attach. 8, Dkt. No. 7-1 at 165.) Moore was sentenced in New Jersey Superior Court, Burlington County in case numbers 12-10-01407-I, 16-05-00495-I, 16-02-00176-I, 16-02-00186-I, 15-08-00973-I, 15-10-01198-I, 12-05-00726-I, and 12-06-00899-I on March 29, 2018, to a 5-year total term of imprisonment. (Kelly Decl., Attach. 9, 10, Dkt. No. 7-1 at 167-201.)

New Jersey credited Moore for 430 days spent in primary state custody from July 10, 2012 to July 19, 2012; March 13, 2014 to March 14, 2014; and February 18, 2015 to April 10, 2016. He also received 167 days credit against his state sentences for serving the previously-imposed Mercer County three-year term(s) from September 30, 2016 to March 15, 2017. (Id., Attach. 11, Dkt. No. 701 at 203.)  On May 14, 2018, Moore was sentenced to a 418-day term of confinement, and credited 418 days for time spent in state presentence custody from February 9, 2015 to April 10, 2016, in New Jersey Superior Court, Hunterdon County, case number 15-01-0023-I, (Kelly Decl., Attach. 12, Dkt. No. 7-1 at 205-07.) The

New Jersey Department of Corrections released Moore on parole on August 2, 2019, (Kelly Decl., Attach. 10, Dkt. No. 7-1 at 201),  but he was immediately taken into custody by New Jersey authorities for extradition to Bucks County, Pennsylvania to face state probation violation charges in the Pennsylvania Common Pleas Court, in case numbers CP-09-CR-0002925-2011 and CP-09-CR-0007139-2003. (Id., Attach. 13, Dkt. No. 7-1 at 209-18.) Bucks County Department of Corrections released Moore from custody on August 16, 2019,  (id., Attach. 14, Dkt. No. 7-1 at 220), despite the federal detainer imposed in 2017 for service of his federal sentence. Moore did not voluntarily surrender to federal authorities following the erroneous release by authorities in Bucks County, Pennsylvania, although he did report for his state parole as required. (Kelly Decl., ¶¶ 14-15, Dkt. No. 7-1.)

On January 22, 2020, the Commonwealth of Pennsylvania determined that Moore violated conditions of probation in Bucks County and terminated his probation in case numbers 7139-03 and  2925-11. (Kelly Decl., Attach. 15, 16, Dkt. No. 7-1 at 222-24.) Federal authorities took Moore into exclusive federal custody on February 24, 2020. (Kelly Decl., Attach. 2, Dkt. No. 7-1 at 19.)  BOP's Designation and Sentence Computation Center ("DSCC") originally calculated Moore's 75-month term of imprisonment to begin on February 24, 2020, with no prior custody credit. (Kelly Decl., Attach. 17, Dkt. No. 7-1 at 226-29.)  This, however, was in error, and on January 7, 2021, DSCC recalculated Moore's federal sentence. (Kelly Decl., Attach. 18, Dkt. No. 7-1 at 231-35.) DSCC applied 391 days jail credit for time Moore spent in official detention from March 17, 2017 through March 28, 2018, and August 3, 2019 through August 16, 2019, because he did not receive state custody credit for those periods. (Id.) Moore's projected release date from his federal

sentence, assuming he receives all good conduct time, is May 25, 2024. (Kelly Decl.,
Attach. 18, Dkt. No. 7-1 at 231.)

In 2018, while undergoing state sentencing, Moore wrote to Judge Beetlestone in the
U.S. District Court, Eastern District of Pennsylvania. (Kelly Decl., Attach. 19, Dkt. No. 7-1
at 237.) Judge Beetlestone appointed counsel for Moore and held oral argument on Moore's
request for a *nunc pro tunc* designation to deem his federal sentence to run concurrently with
the New Jersey state sentences he was facing or, alternatively, for Judge Beetlestone to
recommend that the BOP calculate Moore's federal sentence in such a manner. United
States v. Moore, 14-cr-315 (E.D. Pa.) (Dkt. No. 610); (Kelly Decl., Attach. 19, Dkt. No. 7-1
at 237-253.)  The following arguments were made before Judge Beetlestone:

> THE COURT:  . . . We're talking about something that
> happened in the state court which Mr. Moore believes impacted
> on the time that he is going to serve. So, it's really -- it's the
> state court issue driving a federal court issue, correct?
>
> MS. BRILL: Your Honor, perhaps, I -- okay. Allison Brill from
> the Federal Public Defender –
>
> THE COURT: How are you?
>
> MS. BRILL: -- it's good to meet you. Perhaps, I've made it
> more complicated. This seems to be an error that happened in
> the federal court as well in terms of operating under a
> misconception about where Mr. Moore was in custody. From
> my reading of the record of the Mercer plea and sentence, the
> federal sentence and then, what just happened in Burlington,
> every attorney is operating under the misconception of where
> Mr. Moore is in custody.
>
> Defense counsel- it's opposite of how he pled in Mercer County
> to concurrent time with his federal time, but it's also different
> than, for example, in the PSR when it says on Page 2:
>
>> The defendant has been in federal custody since March 4
>> of 2015.

It -- it appears that, all parties were operating under the conception that his federal time would begin in March of 2015, so it's -- he does, perhaps, have remedies in the state, but there's also ways to resolve it through the federal system as well.

THE COURT: Where -- where are we looking at?

MS. BRILL: A-12, it's one of the judgments, there's four judgments, there is A-12, there's A-19, A-22 and A-25. So, there is no way that it would be concurrent with federal unless he is already in federal custody in -- in terms of at the time, the Court was imposing sentence, it says:

> The sentence imposed on Count 2 is to run concurrent to  --

THE COURT: But why -- why should I be concerned about what was going on in Mercer County?

MS. BRILL: You don't have to be -- you don't have to be. I just want to -- I want to respond to the – the Government's most recent submission saying that the consecutive time in Burlington should guide the Court's decision on federal designation right now. So, let's just go through Burlington. Even though he was given federal -- his time in Burlington -- was to run concurrent with his Mercer time, but consecutive with his federal time, the parties there also believed, he was still in federal custody, that consecutive time was always supposed to begin -- ah -- once he -- thinking that he was already in federal custody. So, the Government just submitted three documents, his guilty plea, it's Page 15 of the guilty plea that the Government just submitted. They're concerned, why he's pleading guilty because he's going to go back into federal custody, this is Page 14 to 18.

THE COURT: No, but in the -- but I'm looking at this and -- and the Court says:

> The sentences to be imposed will be concurrent to those sentences on the indict -- on those indictments but will run consecutively to a federal sentence –

MS. BRILL: Yes.

THE COURT: -- already imposed on the defendant.

MS. BRILL: Correct. But when they said, federal sentence already imposed, they believed, he was also already in federal custody. This is just a question of credits, it can run consecutive. So, on Page 14, they're saying -- the prosecutor:

> Judge, if we can reflect -- just let the green sheet or the court minutes reflect -- the defendant is not to be released to any federal detainer or any other detainer pending sentencing by this Court.

He's in Burlington custody, he's not in federal custody, that's a misconception at the time of the plea. At the time of the sentencing, they're also concerned that he's going to go back in to federal custody and he has one more case, this is Page 17 of the document that the Government submitted, the sentencing transcript from March 29, Page 17. I'd make that suggestion to the Court only to see if Mr. Moore may want to try to resolve that Hunterdon matter before going back to federal custody. Another document shows that they all are – believed that he is in federal custody, this is -- ah -- the judgment of conviction, the Government submitted a twenty-eight-paged document, the twenty-four -- on Page 23, it's talking about gap-time credit between the -- the credit that he's being given to run concurrent with his Mercer sentence and how his Burlington sentence would be imposed. And there is a gap between April of 2015 and – and September of 2016 when they believed, he's in federal custody, even though he's actually in Burlington custody. This was -- he has been -- consistently pled guilty and been sentenced with the understanding -- understanding that he's in federal custody. The reason it matters, of course, is to Mr. Moore and then, I'd ask -- and I'd ask this Court to consider it, because it's -- it would wind up being the difference of two or three years, that's –

THE COURT: Okay. Well, let me -- let me just -- so, the -- the state -- the state charges, was it the same conduct, as the federal

MS. BRILL: No.

THE COURT: -- charges?

MS. BRILL: It's never been the same conduct, it's –

THE COURT: What –

MS. BRILL: -- it's –

THE COURT: -- so, it's a different -- what – what was it?

MS. BRILL: It's counts of theft by deception that occurred in -- I'm looking at his Bureau of Prisons -- his New Jersey Department of Corrections sheet -- for conduct that occurred two times in November of 2011, one time in July of 2012, March, June, August, November, December of 2014 –

MS. BRILL: So, he had no minimum on his state charges, in was between a maximum of three years and five years. And how that -- how that plays out in the state is that, he -- after eighteen months, he goes before the Parole Board and he just recently went before the Parole Board in June and they gave him an extra fourteen months because of this federal detainer. So, having the federal sentence on top of the state sentence changes the state sentence. And that's why – and that's –

THE COURT: Because you have a federal sentence it makes it harsher in the state court?

MS. BRILL: It means that you don't get the benefits of any of the early release, halfway house, the programs that they have to transition people back. So, and -- and that's why if he -- even if he did all of his federal time first and did the consecutive as the state court wants it, he would still get out earlier if the federal went first. The way that it -- the way that it works out, is that he's not going to in to -- the difference in the federal would be that he doesn't get to the halfway house, even with the state detainer at the end.

THE COURT: So, if I -- so you want me to nunc pro tunc to have him placed in state prison and -- so, that would mean that the -- the federal sentence would be served in state prison?

MS. BRILL: Correct. And he would -- he would ultimately go back to federal court, because -- federal prison -- because there's more time in the federal, no matter what. This Court gave a sentence of seventy-five months, which would come out to, roughly, sixty-three and a half months in custody. And, again, so -- so, if this Court does nothing, the Bureau of Prisons will -- will take that as a consecutive, if the Court does -- if the Court is silent, it sees it as a consecutive and that means that he will do his full time, perhaps, if the -- the New Jersey Department of

Corrections keeps giving him the full -- he will do his full time –
get federal custody, I believe, in 2020 -- and then, do the
seventy- five months then.

THE COURT: So, it's possible -- how -- how long has he served
now?

MS. BRILL: Ah, the credit is something, like, four hundred
and -- maybe, five hundred days.

THE COURT: Give it to me in years, I –

MS. BRILL: All right. A year and a half, oh, no, from the date
-- he has credit –

THE DEFENDANT: I was in custody for –

MS. BRILL: -- for -- okay. So, he's been in custody since
February of 2015.

THE COURT: So, almost two years.

MS. BRILL: No, no, no, no, almost –

THE DEFENDANT: Almost four years.

MS. BRILL: -- almost four years.

MS. BRILL: February of 2019, it will be four years.

THE COURT: Okay, four years.

MS. BRILL: Right.

THE COURT: But you're telling me that, absent this glitch, he
would have been let out a year ago?

MS. BRILL: No, no, ah -- sorry, if I've -- I've misspoken. He
would not have start -- he would not have started serving his
state time, he would still be serving his federal time. And
perhaps, they would run -- they would figure out how to run it
consecutively. I don't know how the state would carry out the
custody, when one –

THE COURT: Okay. Let -- let me hear from the Government.

12

MS. WILMOTH: Your Honor, most especially, there is no glitch here from the Government's perspective. Mr. Moore at the time of his arrest in Mercer County, New Jersey, had an outstanding federal warrant which he knew about and woefully absconded from and also several warrants from Mercer County and Burlington County for cases that he had before he was picked up in Mercer County. The Government writed him out of Mercer County and brought him to federal court once he was arrested in Mercer County. So, the Government knew at that point, that he was in primary state custody, but writed over here for federal – for federal court to -- to be presented on these charges. And nothing in the state records to me, can prove that anybody thought that he was in primary federal custody, because he got credit for the state time. So, in each case, in Mercer County as well as in Burlington County when they calculated his jail credit, they gave Mr. Moore credit on his state sentences when -- for the time that he spent here before your Honor -- resolving his federal sentence. And that's because everybody knew that he was in primary state custody, so even –

THE COURT: So, he was -- even though at the Federal Detention Center, it was calculated as a state –

MS. WILMOTH: Absolutely.

THE COURT: -- state time?

MS. WILMOTH: He got credit in Mercer County and that's reflected on Page -- ah, let's see -- in Appendix Page 142, where they calculated -- they calculated every -- all the time that he spent here in 2015, it was calculated and credited to him. In his Mercer County cases, if we'd look at the bottom -- the last paragraph of -- of Appendix Page 142, the period of February 18 , 2015 to -- to September 29, 2016, that was all credited to Mr. Moore's Mercer County cases. And if you'd take a look at the Burlington County sentence on Page 12, he's also -- the past paragraph – given credit for all the time that he sat here in federal court, no one was under the mis-impression –

THE COURT: What page was that?

MS. WILMOTH: I'm sorry. In the Mercer County sentencing transcript of – hold on just a second, your Honor -- that's Page 12 of the Mercer County -- I'm sorry -- the Burlington County sentencing transcript of March 29, 2018, that's on Page 12 in the last paragraph –

THE COURT: Okay.

MS. WILMOTH: -- where the Court said:

> The defendant is -- is entitled to the following jail-time
> credit.

And included in the credits is April -- I'm sorry -- it's February
18, 2015 to April 10, 2016. So, he would not have gotten state
credit for the time that he spend [sic] here, if the folks in the
state thought that he was in federal custody.

THE COURT: Well, let -- let me get Ms. Brill to respond to
that. What's -- what's your response to that?

MS. BRILL: My response is, that the -- every single record is
clear that there is a misconception about the primary custody.
This Court has -- has the discretion to write [a] letter to the
Bureau of Prisons but there is nothing that shows me that
there's not confusion at every step and that Mr. Moore
constantly is asking, just to return me to federal custody. And I
believe they're saying, well, we don't know, we don't know,
literally, every time. So, whether he's getting credit, that's for
the Department of Corrections and the Bureau of Prisons to
decide, but I do not believe that the record at all supports that
everybody was clear about the primary –

THE COURT: Okay.

MS. BRILL: -- jurisdiction.

THE COURT: Okay. So, I am not going to meddle in what a
state court might have thought or might not have thought,
because quite frankly, I don't know. I think that, you indicated
that there is a resolution in the state court, you've got to go
there, because I'm – you know, I -- I actually, have no idea
what -- if I were to issue the order, that you wanted -- I'd have
no idea of the impact of it. I don't even know whether it would
resolve the issue that you -- that you're raising.

MS. BRILL: -- and -- and if I could just propose something that
would meet the needs of the state and still be within your
jurisdiction, which is a nunc pro tunc designation from the day
of his sentencing, which would give him – which would be an

14

additional year that he would spend with no federal credit and
–

THE COURT: No, no. I'm -- I'm not going to do it, I  -- I -- it's
-- it was a problem created in the state, you've got to go back to
the state and resolve it.

MS. BRILL: Okay.

(Kelly Decl., Attach. 19, Dkt. No. 7-1 at 240-252.)

On March 17, 2020, Moore filed a grievance with the Warden of the Federal

Detention Center in Philadelphia, requesting credit "for time he spent in primary

jurisdiction of federal authorities between February 18, 2015 to present" and for time spent

in a halfway house. (Declaration of Corrie Dobovich  ("Dobovich Decl.") Ex. 2, Dkt. No.

7-2 at 16-17.) On March 31, 2020, the Warden denied the grievance because the DSCC had

not issued a certified sentence computation. (Id.) Moore appealed to the BOP Regional

Director on August 25, 2020. (Id., ¶ 5.) DSCC issued Moore's new sentence computation

on January 8, 2021, and also denied his request for "*nunc pro tunc*" designation of part of his

federal sentence. (Kelly Decl., Attach. 20, Dkt. No. 7-1 at 255.) The BOP denied the request

because Moore's sentencing court had denied the same request. (Id.)

II.     DISCUSSION

A.     Standard of Law

28 U.S.C. § 2241 provides, in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme
Court, any justice thereof, the district courts and any circuit
judge within their respective jurisdictions . . .

(c) The writ of habeas corpus shall not extend to a prisoner
unless— . . .

(3) He is in custody in violation of the Constitution or
laws or treaties of the United States….

District courts have jurisdiction under § 2241 when a federal prisoner challenges the BOP's calculation of his sentence. Savage v. Zickefoose, 446 F. App'x 524, 526 (3d Cir. 2011); Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976).

The Attorney General, through the BOP, is responsible for administering federal sentences. United States v. Wilson, 503 U.S. 329, 335 (1992). The calculation of federal sentences is governed by 18 U.S.C. § 3585, which provides:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

To determine when a federal sentence commences under § 3585(a) when a prisoner is subject to multiple terms of imprisonment, the doctrine of primary jurisdiction comes into play. See generally, George v. Longley, 463 F. App'x 136, 139 (3d Cir. 2012) ("the 'exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty' and the 'priority of prosecution'" is a question "'of comity between the sovereignties'") (quoting Bowman v. Wilson, 672 F.2d 1145 (3d Cir. 1983)). Primary jurisdiction is obtained by and remains with the sovereign that first arrested the offender, until that sovereign relinquishes

16

jurisdiction by release on bail, release on parole, dismissal of the charges or expiration of the sentence. Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000). "The sovereign that first acquires custody of a defendant is entitled to custody until any sentence imposed is served." Allen v. Nash, 236 F. App'x 779, 783 (3d Cir. 2007) (citing Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)).

A federal sentencing court has the authority to determine whether a federal sentence will be concurrent or consecutive to an anticipated but not yet imposed state sentence, although it is not required to make a determination before the anticipated sentence is imposed. Setser v. U.S., 566 U.S. 231, 234-42 (2012). "[M]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). "[T]he BOP is not bound in any way by a state court's direction that the state and federal sentences run concurrently." Galloway v. Warden of F.C.I. Ft. Dix, 385 F. App'x 59, 65 (3d Cir. 2010) (citing Barden, 921 F.2d 476, 478 n. 4 (3d Cir. 1990) (citing U.S. Const. art. VI, cl. 2) (additional citation omitted)).

Pursuant to Barden, the BOP has the authority to designate, *nunc pro tunc*, a state correctional facility for service of an inmate's federal sentence. 921 F.2d at 478. When the BOP does so, the inmate may receive credit for the time period in question against both his state and federal sentence, beginning on the date the federal sentence was imposed. DeJesus v. Zenk, 374 F. App'x 245, 247 (3d Cir. 2010) (emphasis added)  (when a district designates the state institution as the place for service of the federal sentence to achieve concurrent sentences, the federal sentence is properly deemed to commence on the date imposed).

    B.    <u>The Parties' Arguments</u>

        1.    *The Petition*

Petitioner asserts the following ground for relief in his petition for writ of habeas corpus under 28 U.S.C. § 2241:

> My federal sentence should have ended in September 2020. I am being held after my imposed federal sentence. BOP has miscalculated the duration of my sentence to my detriment and injury. I was arrested on a federal warrant on February 18, 2015. My federal time did not stop while on writ to resolve state charges. My state sentence was run concurrent to my federal time. I am done with my state sentences. (BOP hasn't removed detainers). My federal time should have expired in September 2020.

(Pet., Dkt. No. 1 at 6.)

      2.    *The Answer*

In opposition to habeas relief, Respondent argues that the BOP's revised sentence calculation is correct and Petitioner has not been held beyond his release date. (Answer, Dkt. No. 7 at 2.) New Jersey state authorities had primary jurisdiction over Petitioner on February 18, 2015, when they arrested him on a warrant for stealing a snow plow. (Kelly Decl., ¶ 4; PSR ¶ 51, Dkt. No. 18 at 11.)  Federal custody after this date, on March 4, 2015, was not primary but pursuant to a *writ of habeas corpus ad prosequendum.* (Kelly Decl., ¶ 5, Dkt. No. 7-1; Attach. 3 at 24-25.) Petitioner was not released from primary state custody until he finished serving his state sentence on August 16, 2019, and was released by Bucks County Department of Corrections. (Kelly Decl. ¶ 14; Attach 14, Dkt. No. 7-1 at 220.) However, Bucks County released Petitioner on parole without honoring the federal detainer. (Id.) Petitioner's probation was terminated in Bucks County on January 22, 2020, and he was not taken into exclusive federal custody until February 24, 2020. (Kelly Decl. ¶¶ 15-16; Attach. 2, Dkt. No. 7-1 at 19.) Therefore, his federal sentence commenced on February 24, 2020. (Id.)

The BOP determined Petitioner's prior custody credit in January 2021, after having first calculated his sentence without prior custody credit. (Answer, Dkt. No. 7 at 12.) The calculation is based on a 75-month term of confinement beginning February 24, 2020, with prior custody credit of 391 days for time spent in official detention from March 17, 2017 through March 28, 2018, and August 3, 201, through August 16, 2019. (Id., Attach. 18, Dkt. No. 7-1 at 231-35.) No further prior custody credit was granted because it was applied to Petitioner's various state sentences. (Answer, Dkt. No. 7 at 12-13, Kelly Decl., Attach. 6, Dkt. No. 7-1 at 160; Attach. 11, Dkt. No. 7-1 at 203.)  Petitioner sought a *nunc pro tunc* designation of his federal sentence as having been served, in part, during the service of his New Jersey state sentences, but the BOP denied the request after Judge Beetlestone held a hearing and denied the request. (Answer, Dkt. No. 7 at 13; Kelly Decl., Attach. 20, Dkt. No. 7-1 at 255.)

### 3.   *Petitioner's Replies*

In a letter received by the Court on January 25, 2021, Petitioner asserted that he was never "borrowed" by federal authorities, he was in their primary custody upon his arrest by a team of U.S. Marshals under the supervision of the United States Secret Service. (Letter, Dkt. No. 8 at 2.)  Petitioner claims this is evidenced by the fact that on the night of his arrest, he was placed in administrative segregation in MCCC upon order of the United States Secret Service. (Id.) Petitioner submits that Secret Service Agent Aaron McCaa[2] contacted Sergeant Grier at MCCC on February 18, 2015, and informed him that Petitioner

---

[2]  McCaa's name was misspelled in the habeas petition and other documents as McCrea. The Court will use the spelling provided by Special Agent McCaa at Petitioner's sentencing hearing.

was in federal custody and should not be permitted to use the phone or speak to any jail staff without a supervisor present, and such instructions were placed on his cell door. (Letter, Dkt. No. 8 at 2.) Warden Charles Ellis confirmed to Petitioner that he was not in state custody, he was being held until federal authorities could pick him up. (Id. at 2-3.) Petitioner submits that Special Agent McCaa picked him up sometime later. (Id. at 3.) Petitioner requests an evidentiary hearing to establish these facts by the testimony of Sergeant Grier, Warden Ellis, and Special Agent McCaa. (Id. at 2-3.)

Petitioner filed his reply brief on February 4, 2021. (Reply Brief, Dkt. No. 10.) He submits that he was arrested by a U.S. Marshal on February 18, 2015, upon instruction of Special Agent McCaa. (Id. at 1.)  The arresting U.S. Marshal showed Petitioner a federal arrest warrant that was on his phone, whereupon Petitioner was taken to MCCC. (Id. at 1.) Sergeant T. Grier at MCCC denied Petitioner a phone call because the United States Secret Service had called and instructed Petitioner was not to make a phone call. (Reply Brief, Dkt. No. 10 at 1.) Petitioner was told he could make a call after federal authorities picked him up. (Id. at 2.)  Petitioner repeats his allegation that Warden Ellis confirmed he was being held for federal authorities and was not in state custody, and that a sign was placed on his cell door with instructions by the United States Secret Service and Department of Homeland Security. (Id.) Thus, Petitioner contends he was in primary federal custody on February 18, 2015, which is why a state court judge imposed a state sentence concurrent with his federal sentence. (Id. at 4; Kelly Decl., Attach. 1, Dkt. No. 7-1 at 9-16; Attach. 5, Dkt. No. 7-1 at 147-158.) Petitioner, again, requested an evidentiary hearing in this matter. (Reply Brief, Dkt. No. 10 at 4-5.) Petitioner also submits that while on parole, he was married and reported to parole officers as instructed, and was not advised any warrants for seven

20

months. (Id. at 7.) He then voluntarily surrendered to federal authorities as instructed.

[3](Reply Brief, Dkt. No. 10 at 4-5.) When he voluntarily surrendered, Petitioner alleges that

"members of U.S. Marshal task force in Philly met with United States Magistrate Judge in

Philadelphia to request Petitioner's release because of confusion with time computation."

(Id.)

> Petitioner submitted a letter from his attorney, Mark A. Fury, whom Petitioner

retained to assist him with his jail credits. (Reply Brief, Exhibit, Dkt. No. 11.)  Attorney

Fury wrote, in relevant part:

> Mr. Moore believes that there was a discrepancy in the jail
> credits for the days that he was in federal custody commencing
> on his date of arrest in 2015. I have spoken with Classification
> in Mercer County Department of Corrections and was provided
> a printout from their system showing that when Mr. Moore was
> arrested on February 28, 2015, he was arrested by the U.S.
> Marshals and was held on the federal charge.

> Mr. Moore asserts that when he was arrested on this date he
> was told that he was under being detained on his federal case.
> As noted in their system, he was arrested on February 28th,[4]
> held in R&D, and the Federal Department lodged the formal
> detainer on March 10, 2015. Mr. Moore recalls the being
> advised that he was not only under federal jurisdiction, but that
> he was placed in a room with a sign that advised no questioning
> permitted because he was waiting Homeland Security
> Interviews…. Please note that Mr. Funanish from Mercer
> County Department of Corrections has provided you with her
> telephone number on the printout, if you have any additional
> questions….

 (Id. at 3-4.)

---

[3] Attorney Fury did not enter an appearance on Petitioner's behalf in this matter.

[4] This appears to be a typographical error in Attorney Fury's letter, as the printout contains
the date February 18, 2015, not February 28. (Exhibit, Dkt. No. 11 at 5.)

On August 10, 2021, Petitioner submitted an emergency motion for a preliminary injunction, requesting that the Court consolidate a preliminary injunction hearing and a trial on the merits of this matter. (Mot. for Prelim. Injunction, Dkt. No. 14.) On August 16, 2021, Petitioner submitted a document self-styled as "Questions Presented in Support of Preliminary Injunction." (Letter, Dkt. No. 15.) The questions Petitioner presents are as follows:

> (1) When Petitioner was arrested by the United States Marshals and housed in a state facility as a federal inmate, did the federal government obtain primary jurisdiction; and (2) whether primary jurisdiction was relinquished by the Federal Government at any time during Mr. Moore's federal custody?

(Letter, Dkt. No. 15 at 1.) On August 24, 2021, Petitioner also submitted a motion to appoint pro bono counsel. (Mot. to Appoint Counsel, Dkt. No. 16.)

C.   Analysis

1.   *Evidentiary hearing is required*

The petitioner bears the burden to establish the need for an evidentiary hearing in a habeas proceeding. Palmer v. Hendricks, 592 F.3d 386, 396 (3d Cir. 2010). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true would entitle the applicant to federal habeas corpus relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Lee v. Glunt, 667 F.3d 397, 407 (3d Cir. 2012). Here, the circumstances surrounding Petitioner's arrest on February 18, 2015 are murky at best. Both state and federal authorities had arrest warrants for Petitioner, and state and federal authorities are alleged to have been involved in the actual arrest. Petitioner's PSR states that he was arrested by  New Jersey state authorities for stealing a snow plow, but the record does not

22

contain an arrest warrant, indictment, case number, or judgment and conviction related to this arrest. (Kelly Decl., ¶ 4; PSR ¶ 51, Dkt. No. 18 at 11.)  An evidentiary hearing is necessary to establish the "who, what, where, why and how" surrounding Petitioner's arrest on February 18, 2015. As required by Habeas Rule 8, and under 18 U.S.C. § 3006A(a)(2)(B) when the interests of justice so require, the Court must appoint counsel to represent Petitioner at the evidentiary hearing.

IT IS therefore on this **28th day of October 2021**,

**ORDERED** that Petitioner's motion to appoint counsel (Dkt. No. 16) is **GRANTED**;  the Court will appoint counsel for Petitioner pursuant to 18 U.S.C. § 3006A(a)(2)(B) for an evidentiary hearing on Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241; counsel must be readily available to assist on a priority basis; the Court will then confer with the parties and set a schedule for an expedited evidentiary hearing; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Petitioner by regular U.S. mail.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**