NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

:
WARREN MOORE,                          :
                                       :      Civil Action No. 20-19857 (RMB)
                    Petitioner         :
                                       :
        v.                             :            **OPINION**
                                       :
DAVID E. ORTIZ, WARDEN                 :
                                       :
                    Respondent         :
                                       :

---

**APPEARANCES:**

TERRI S. LODGE, ESQ.
THE LAW OFFICES OF TERI S. LODGE
10,000 LINCOLN DR EAST
SUITE 201
MARLTON, NJ 08053
        On behalf of Petitioner

JOHN T. STINSON, ASSISTANT UNITED STATES ATTORNEY
DOJ-USAO
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101
        On behalf of Respondent

**BUMB, United States District Judge**

        Petitioner Warren Moore ("Petitioner") was an inmate incarcerated in the

Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") at the

time he filed a habeas petition under 28 U.S.C. § 2241, challenging the Bureau of

Prison's ("BOP") calculation of his sentence. (Pet., Docket  No. 1.) Respondent filed

an answer, opposing habeas relief (Answer, Docket. No. 7), and Petitioner replied. (Letters, Docket Nos. 8, 9; Reply Brief, Docket Nos. 10, 11.) The Court subsequently ordered Respondent to file Petitioner's Presentence Report under seal. (PSR, Docket No. 18.) Petitioner filed an emergency motion for preliminary injunctive relief and a motion to appoint pro bono counsel. (Emergency Mot. Preliminary Inj., Docket No. 14; Mot. to Appoint Counsel, Docket No. 16.) This Court appointed counsel to Petitioner, and an evidentiary hearing was held on June 1, 2022. Based upon the evidence and testimony submitted in the evidentiary hearing, and all of the records in this matter, this Court denies the habeas petition because Petitioner has received all prior custody credit available against his federal sentence.[1]

---

[1] Pro Bono Counsel for Petitioner ably presented policy reasons, in Petitioner's pretrial brief, why the BOP or federal sentencing courts should, after federal sentencing, give effect to state courts' imposition of concurrent sentences.  It is, however, well-established that the BOP, by statute, determines where a federal prisoner serves his/her sentence, and will seek the sentencing court's recommendation on nunc pro tunc designations to serve a federal sentence in a state facility. Apart from the discretionary authority exercised by the BOP with input from sentencing courts, it is up to Congress to make legislative changes concerning calculation of federal sentences.  See Galloway v. Warden of F.C.I. Ft. Dix, 385 F. App'x 59, 62 (3d. Cir. 2010) (describing the statutory authority of the BOP "to effect concurrency of a federal sentence and state sentence through a nunc pro tunc designation.")  The issues of ineffective assistance of counsel, voluntariness of the state plea, and due process violations arising from the expectations created by the state sentences are issues properly brought in a state habeas proceeding under 28 U.S.C. § 2254, if available. Finally, binding precedent establishes that "neither the federal courts nor the Bureau [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently. Barden, 921 F.3d at 478, n. 4 (citing U.S. Const. art. VI, cl. 2.)

## I.      BACKGROUND

The factual and procedural background in this matter was fully set forth in this Court's Order dated October 28, 2021, and is incorporated by reference herein. (Order, Docket No. 22.)  The sole factual issue for the evidentiary hearing is whether Petitioner was arrested on February 18, 2015, based on state and/or federal arrest warrants. Once this question is resolved, the challenge to the BOP's calculation can be decided.

## II.     June 1, 2022 Evidentiary Hearing

Petitioner and Respondent[2] stipulated to the admission of the exhibits submitted by the parties with their pretrial hearing briefs (Docket Nos. 36, 37) and waived opening and closing statements.

### A.      Petitioner's Case

#### 1.      Chief Gary Britton

Chief Gary Britton from the Internal Affairs Unit of the Mercer County Correctional Center ("MCCC") was Petitioner's first witness.  He testified that Petitioner's name appears in the Receiving and Discharge ("R&D") logbook at MCCC (Exhibit P9, Docket Nos. 37-9), indicating that Petitioner went through the booking process on February 18, 2015 and was assigned to Cell R3. The R&D Unit is primarily used to house detainees who are charged with prison infractions, although the unit also serves as an overflow for new commitments.  Petitioner was

---

[2] Respondents' exhibits were submitted in hard copies only.

questioned in the Internal Affairs Office, Room 106, in the R&D Unit for 17 minutes. The next day, Petitioner was transferred to general population. There was no indication in the logbook that Petitioner was arrested on federal charges, which normally would have been noted.

## 2.    Petitioner's testimony

Petitioner testified on his own behalf. In February 2014, Petitioner pled guilty to two Indictments in Mercer County Superior Court, New Jersey, but he was not sentenced. At that time, he was in discussions with Secret Service Special Agent McCaa ("Special Agent McCaa"), but there were no federal charges against him. In November 2014, he learned from Facebook that the Secret Service was seeking information on him, although he provided no corroboration of this fact.

Petitioner further testified that on February 18, 2015, in response to a direct message on Instagram from an old friend, Petitioner went to meet his friend in Trenton, New Jersey.  Just after Petitioner's friend got in his car, law enforcement arrived in unmarked cars, removed his friend from the car, and started shouting "federal agents, open the door." Petitioner did not identify himself.  One of the agents showed Petitioner his IPhone, which displayed an image of Petitioner and a U.S. Marshal badge. Petitioner also saw the words "federal arrest, detain." The agent identified himself as a U.S. Marshal and was wearing a U.S. Marshal shirt or jacket. The U.S. Marshal, whose name Petitioner did not know, took Petitioner to MCCC for booking and said the "feds" will pick you up tomorrow.

Contrary to Chief Gary Britton's testimony, Petitioner testified that he was first placed in a holding cell at MCCC for several hours.  He recognized Sergeant Grier, told her what happened and requested a phone call. Back in the holding cell, Sergeant Grier later told Petitioner that the "feds" said not to let you use the phone. Petitioner was taken to Investigation Room 106 and left there, but no one ever spoke to him.  Instead, someone displayed a dry-erase board to him where it was written that, per the warden, Petitioner should not be interacted with based on instructions of the Secret Service and Department of Homeland Security ("DHS"). Warden Ellis visited Petitioner in Room 106 and told him that he had spoken to "the feds" and they were coming to "get him." Then, Petitioner was placed in the R&D area, and moved to general population the next day.

Petitioner testified that the Secret Service and the DHS picked him up two weeks later and moved him to FDC Philadelphia. He remained there for 14 months and pled guilty to federal charges in the Eastern District of Pennsylvania ("EDPA") on July 29, 2015.  On April 11, 2016, U.S. District Judge Wendy Beetlestone imposed his federal sentence.  Petitioner believed he was receiving credit against his federal sentence for all of his time spent in detention.

On May 6, 2016, Petitioner was returned to MCCC.  On July 6, 2016, he went before Judge Brown on his earlier plea and two new indictments in Mercer County. The new plea was for concurrent sentencing for all of the indictments. According to Petitioner, Judge Brown told him that, because he was in federal custody, he would sentence him *in abstentia*.  However, Petitioner was not taken back into federal

custody and remained at MCCC.  Thus, Judge Brown sentenced him to "three flat" on September 30, 2016. Petitioner served his Mercer County sentence until he was paroled four months later, but then he was sent to Burlington County, New Jersey, where he pled guilty and received a "5 flat" sentence, consecutive to the federal sentence he was already serving.  This is when Petitioner first learned he was not getting credit against his federal sentence.

Thereafter, Petitioner sought relief from Judge Beetlestone in the EDPA. Judge Beetlestone denied Petitioner's request for a *nunc pro tunc* designation of the state prison for service of his federal sentence, which would have achieved at least partially concurrent state and federal sentences.

After serving his Burlington County, New Jersey sentence, Petitioner was extradited to Bucks County, Pennsylvania to resolve charges. After his release from his Bucks County sentence, Petitioner was contacted in August 2019, at his home by his pretrial services officer ("PTO") from Bucks County. Petitioner asked whether he was in federal custody, suggesting that he might be on federal supervised release. The Bucks County PTO informed him that after speaking to a senior PTO in the EDPA, Petitioner was under the supervision of the state because he was never picked up on the federal detainer.

On February 24, 2020, Petitioner was asked to report to New Jersey probation and parole to clear up a matter. When he did so, U.S. Marshals were there and took him into custody. They first brought him to Burlington County, New Jersey, and then to Philadelphia. The U.S. Marshals brought him to appear before a U.S.

Magistrate Judge in the EDPA to "clear up a glitch." Instead, Petitioner was told that he would have to go before his sentencing judge at a later time, and he was taken back to FDC Philadelphia. In April 2020, while housed at MDC Brooklyn, Petitioner learned that he had been serving his state, not federal sentence.

On cross-examination, Petitioner admitted that he did not have corroboration of his testimony about what others had said to him regarding being in federal custody upon his arrest, beginning on February 18, 2015. Petitioner further admitted that although a U.S. Marshal was present for his arrest, the arrest report for that date, Exhibit P2 (Docket No. 37-2), showed only Mercer County charges. Petitioner believed he had seen inconsistent arrest warrants but when shown the alleged inconsistent warrant, Exhibit P1 (Docket No. 37-1), he acknowledged that no federal warrants were listed.  Petitioner reviewed the MCCC summary commitment, Government's Exhibit G, and agreed all charges were lodged by the Mercer County Sheriff's Office. Petitioner testified that he was not shown a federal arrest warrant when he was arrested on February 18, 2015, only the picture of himself as a fugitive on the U.S. Marshal's IPhone.

### 3.    Mark Fury, Esq.

Petitioner's second witness, Mark Fury, Esq., was his attorney who handled the New Jersey state charges.  Mr. Fury testified that

> On the day that he was arrested, he explained to me at
> some length, and I believed it, that the . . . troop of
> officers, while it included both federal and state
> representatives, my understanding was he was taken into
> federal custody. And I was therefore confident—as I

> recall—he was held at a federal facility or a state facility that held federal. . . . But I was firmly convinced that he was in federal custody, and that's why I went forward with the deal as I did.
>
> . . .
>
> There was a point in time we went back through the discovery to confirm that when the—I just don't have a better word for it—the arresting party. The task force is what I guess I should call it. But it was a mixed group of law enforcement officers. But the people that talked to him, the people that cuffed him, that people that fed him, to my recollection, by his report, were all the federal guys. And he represented to me—and I looked in the police reports to try to confirm—that those people represented to him that he was back in federal custody.

With this understanding, Mr. Fury explained his strategy for the state and federal charges, "[m]y experience is that no one can compel a federal court to run their sentence concurrent to an existing state sentence, but state judges will routinely promise and deliver concurrency to an existing federal sentence . . . it's just the way it is." Thus, it was his practice to advise criminal defendants to plead in state court first, delay sentencing until after the federal court imposed sentence, then return to state court for sentencing *in abstentia*, and request that the state sentence run concurrent to the federal sentence. This would permit the defendant to return to federal custody and serve the federal sentence first and achieve the shortest confinement on the concurrent sentences.

They proceeded according to this plan until Mr. Fury learned that Petitioner was not in primary federal custody because he was not returned to serve his federal

sentence after sentence was imposed in Mercer County Superior Court.[3]  As such,

Petitioner with Mr. Fury's counsel, attempted to resolve this issue before Judge

Beetlestone in the EDPA in 2018, but she denied the request to designate the state

prison for service of Petitioner's federal sentence, and suggested that Petitioner

resolve the issue in state court.

### 4.    William Perez

Petitioner's final two witnesses appeared by previously recorded video

depositions. William Perez, retired from the Mercer County Sheriff's Office, testified

that he had been a detective with the Mercer County warrant unit and was

responsible primarily for locating and arresting suspects based on Mercer County

arrest warrants.  However, he was also on a state/federal task force, supervised by a

---

[3] Mr. Fury explained what he could have done differently, had he known Petitioner was not in primary federal custody:

> I could have just held off sentencing forever until the issue got straightened out. That would have been the easiest thing. I could have asked for a suspended sentence or, you know, other things. But the thing that I like to do is . . . waive his appearance at the ultimate sentencing. And, again, in the state court system, once a plea is taken, it comes off a judge's backlog list, so they're much more comfortable holding open a sentencing than they are holding open an open case and just rolling it along. So once the plea is taken . . . the judge is happy. I can sentence *in abstentia*. My guy is happy, and you just work it out to everybody's benefit.

Mr. Fury expected Petitioner would be sentenced *in abstentia* in Mercer County Superior Court.

U.S. Marshal, and sometimes assisted with executing federal arrest warrants. He reviewed the February 18, 2015 arrest report completed by Mr. Perez after Petitioner's arrest. (Exhibit P2, Docket No. 37-2.)  Based solely on the report—because he did not have an independent recollection of the events—Mr. Perez stated that he did not remember whether there was a federal arrest warrant for Petitioner, but he saw Petitioner on Home Avenue in Trenton, New Jersey and arrested him on Mercer County warrants. He took Petitioner to MCCC. According to the arrest report, Matt Stillman was also present for the arrest.

On cross-examination Mr. Perez testified that Gerald J. Council was the Mercer County Judge who signed the arrest warrants that formed the basis of Petitioner's arrest on February 18, 2015. Mr. Perez did not write arrest reports when he assisted the task force with executing federal arrests. If an arrest was made on state charges but there were also federal charges, Mr. Perez would write a report for the state charges and merely reference the federal charges, which was not done here.

### 5.    Marshal Matthew Stillman

Petitioner's final witness was U.S. Marshal Matthew Stillman. He testified that in 2014, he served on a regional fugitive task force that executed state and federal arrest warrants. At the end of 2014, he was aware of Petitioner's outstanding Mercer County arrest warrants. A confidential informant advised Mercer County authorities that Petitioner would be on Home Avenue in Trenton, New Jersey on February 18, 2015, so the task force set up surveillance on the street. Prior to the

arrest, Mr. Stillman was unaware of any federal arrest warrants for Petitioner. He
believed they were executing only state arrest warrants when they arrested Petitioner.

### B.    Government's Rebuttal

The Government called one witness, Secret Service Special Agent Aaron
McCaa. Special Agent Aaron McCaa testified that, sometime in 2014, he received a
call from a prosecutor in Burlington County, New Jersey to request that he meet with
Petitioner.  As a result of this meeting, a new investigation was opened, which the
DHS ultimately joined. Special Agent McCaa could not remember when the federal
arrest warrant issued, but according to the federal sentencing transcript, a complaint
and warrant, of which Petitioner was aware, issued in September 2014, and was
replaced on November 20, 2014, when a federal indictment issued,[4] but Petitioner
could not be located.

Special Agent McCaa spoke to Petitioner frequently in 2014 through early
2015. He did not, however, participate in Petitioner's February 2015 arrest, did not
know Petitioner was going to be arrested, and he did not coordinate with the U.S.
Marshals and Mercer County law enforcement in effectuating Petitioner's arrest.
Special Agent McCaa received a phone call from the nationwide Secret Service
investigative services desk, alerting him that Petitioner had been picked up by the
Mercer County Sheriff's Office. Special Agent McCaa specifically remembered that
Petitioner was in state rather than federal custody upon his arrest because an NCIC

---

[4] *See* Petitioner's federal sentencing transcript, Kelly Decl., Attach. 4,. Docket No. 7-
1 at 72-76.

report from the Mercer County Sheriff's Department indicated he had been arrested.
He later learned that the arrest was for theft of a snowplow. Special Agent McCaa
confirmed with the investigative services desk that he had an active arrest warrant for
Petitioner, and the investigative services desk later informed him that they put a
detainer on Petitioner so he would not be released prior to appearing before a federal
judge. Special Agent McCaa informed the local assistant United States Attorney in
the EDPA and the Burlington County Prosecutor's Office that Petitioner had been
arrested and a federal detainer was placed on him.  It was then up to the assistant
U.S. Attorney and local attorneys to work out where Petitioner was going to be
housed, and when Petitioner could be picked up for an appearance in the EDPA.
This was accomplished through paperwork, which was signed off on by the U.S.
Attorney and a federal judge before Petitioner was picked up from Mercer County.
Special Agent McCaa and others picked Petitioner up and brought him for an
arraignment in the EDPA. It was then up to the attorneys where Petitioner would be
transferred. The sole issue presented in this habeas proceeding is whether Petitioner
was in primary federal custody upon his arrest on February 18, 2015.

## III.   DISCUSSION

### A.   Findings of Fact

Based on Petitioner's Exhibits P1 and P2, and the credible testimony of retired
Detective William Perez from the Mercer County Sheriff's Office and U.S. Marshal
Matthew Stillman, Petitioner was arrested, on February 18, 2015, by a regional
fugitive task force with the authority to execute state and federal warrants. According

to Messrs. Perez and Stillman, and consistent with the arrest reports, the only arrest warrants that were executed on February 18, 2015 were New Jersey state arrest warrants from Mercer County. (Exhibits P1, P2, Docket Nos. 37-1, 37-2.) This conclusion is further corroborated by the credible testimony of Chief Gary Britton, that the R&D logbook in MCCC showed Petitioner's commitment on February 18, 2015, without reference to federal charges. Federal charges would have been noted in the logbook if Petitioner was in federal custody. This finding is also corroborated by Special Agent McCaa's credible testimony that he did not participate in Petitioner's February 18, 2015 arrest, he did not know Petitioner was going to be arrested on that day, and he did not coordinate with the task force in effectuating Petitioner's arrest.

Petitioner's testimony that Sergeant Grier and Warden Ellis of MCCC advised him that he was in federal custody was not credible. Moreover, it is uncorroborated and inconsistent with the R&D logbook, and the arrest warrants themselves. While there may have been confusion, on the part of various individuals over the course of time, about which authority had primary custody over Petitioner because he was arrested by a regional task force made up of federal and local law enforcement with authority to execute state and federal warrants, much of this confusion can be attributable to the "story" Petitioner fabricated.

Petitioner's counsel, Mr. Fury, explained his strategy for obtaining concurrent state and federal sentences. It was his belief that New Jersey criminal defendants should always be sentenced in federal court first, because state courts could be relied on to grant requests for concurrent sentences after a federal sentence was imposed,

but not vice versa. Petitioner's account to Mr. Fury of the events of his February 18, 2015 arrest and detention convinced Mr. Fury that Petitioner was in primary federal custody.  Thus, Petitioner was hoisted by his own petard, because if Mr. Fury had discovered that Petitioner was in primary state custody by confirming the arrest warrants, he would have pursued different strategies for sentencing, strategies that he described in his testimony.

In 2018, Petitioner attempted to rectify the situation he found himself in by writing a letter to Judge Beetlestone in the EDPA, seeking her recommendation for the BOP to designate *nunc pro tunc* the state facility to serve his federal sentence in order to achieve concurrent state and federal sentences.  Judge Beetlestone appointed counsel to Petitioner and held a hearing but ultimately denied relief and referred Petitioner to state court to resolve any confusion on the state court's part concerning Petitioner's state sentences. Thus, the BOP declined the *nunc pro trunc* designation, which is not at issue here.  The only question is who had primary jurisdiction.

### B.   Standard of Law

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless— . . .
>
>> (3) He is in custody in violation of the Constitution or laws or treaties of the United States….

14

District courts have jurisdiction under § 2241 when a federal prisoner

challenges the BOP's calculation of his sentence. *Savage v. Zickefoose*, 446 F. App'x

524, 526 (3d Cir. 2011); *Gomori v. Arnold*, 533 F.2d 871, 874 (3d Cir. 1976).

The Attorney General, through the BOP, is responsible for administering

federal sentences. *United States v. Wilson*, 503 U.S. 329, 335 (1992). The calculation of

federal sentences is governed by 18 U.S.C. § 3585, which provides:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

To determine when a federal sentence commences under § 3585(a) when a

prisoner is subject to multiple terms of imprisonment, the doctrine of primary

jurisdiction comes into play. *See generally*, *George v. Longley*, 463 F. App'x 136, 139

(3d Cir. 2012) ("the 'exercise of jurisdiction over a prisoner who has violated the law

of more than one sovereignty' and the 'priority of prosecution'" is a question "'of

comity between the sovereignties'") (quoting *Bowman v. Wilson*, 672 F.2d 1145 (3d

Cir. 1983)). Primary jurisdiction is obtained by and remains with the sovereign that first arrested the offender, until that sovereign relinquishes jurisdiction by release on bail, release on parole, dismissal of the charges or expiration of the sentence. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000). "The sovereign that first acquires custody of a defendant is entitled to custody until any sentence imposed is served." *Allen v. Nash*, 236 F. App'x 779, 783 (3d Cir. 2007) (citing *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922)).

Pursuant to *Barden*, the BOP has the authority to designate, *nunc pro tunc*, a state correctional facility for service of an inmate's federal sentence. 921 F.2d at 478. When the BOP does so, the inmate may receive credit for the time period in question against both his state and federal sentence, beginning on the date the federal sentence was imposed. *DeJesus v. Zenk*, 374 F. App'x 245, 247 (3d Cir. 2010) (emphasis added) (when a district designates the state institution as the place for service of the federal sentence to achieve concurrent sentences, the federal sentence is properly deemed to commence on the date imposed). It is the BOP's practice to inquire whether the federal sentencing court recommends a *nunc pro tunc* designation. *Galloway*, 385 F. App'x at 64 (3d. Cir. 2010) (citing BOP Program Statement 5160.05.)

## C. Federal authorities did not obtain primary jurisdiction over Petitioner until February 24, 2020

"[T]he law on this point is clear: a prisoner detained pursuant to a writ of *habeas corpus ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner." *Rios v.*

*Wiley*, 201 F.3d 257, 274 (3d Cir. 2000). For the reasons above, this Court holds that the State of New Jersey had primary custody over Petitioner when he was arrested on February 18, 2015, and detained in MCCC. The record supports the conclusion reached by the BOP that federal authorities did not obtain primary jurisdiction over Petitioner until February 24, 2020, when Petitioner self-surrendered after his mistaken release by state authorities who ignored the federal detainer. (Kelly Decl. ¶ 16; Attach. 2,. Docket No. 7-1 at 18.) Therefore, the Bureau of Prisons properly found that Petitioner's federal sentence commenced when he was received in federal custody on February 24, 2020, to serve his federal sentence. 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.") Petitioner was entitled to prior custody credit only for time spent in detention that was not credited to his state sentences. 18 U.S.C. § 3585(b). The BOP properly awarded Petitioner all prior custody credit that was not applied against a state sentence.  (Kelly Decl., ¶¶ 16-18, Docket No. 7-1; Attach. 2, Docket No. 7-1 at 18-21; Attach. 18, Docket No. 7-1 at 230-33.)

## IV.   CONCLUSION

For the reason discussed above, the habeas petition is denied. Petitioner's emergency motion for a preliminary injunction (Docket No. 14) is denied as moot.

An appropriate Order follows.


Dated: **June 14, 2022**

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**